# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LA'RON MARSHALL,**

      **Plaintiff,**

                                                     Civil action no. 2:10cv3
                                                    (Judge Maxwell)

**v.**

**HARLEY LAPPIN, Director of the BOP;**
**K.M. WHITE, Mid-Atlantic Regional Dir.;**
**WARDEN JAMES CROSS, Warden USP Hazelton;**
**DEBBIE LOHR, DHO Official of USP-Hazelton;**
**CONSTANCE REESE, Warden FCI Talladega;**

      **Defendants.**

## REPORT AND RECOMMENDATION

On January 11, 2010, the plaintiff, initiated this case by filing a civil rights complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On January 26, 2010, the plaintiff was granted leave to proceed *in forma pauperis*. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

## I. The Complaint

In his complaint, the plaintiff alleges that during his incarceration at USP Hazelton, he was recommended for, and eventually transferred to a Special Management Unit ("SMU"). He is currently incarcerated in the SMU at FCI Talladega which is located in Alabama. The plaintiff alleges that he

was denied the right to participate in every stage of the referral procedure. In addition, the plaintiff alleges that he was denied an impartial hearing officer during the referral procedure. Finally, the plaintiff complains at length about the conditions of his confinement in the SMU. Among his complaints are that there is continuous screaming, banging, fires being set, throwing of human feces, excessive forces beatings and gassing with pepper spray by staff. The plaintiff maintains that these conditions keep him under extreme mental, physical, emotional and spiritual distress. For his claim for relief, the plaintiff seeks: (1) immediate removal from the SMU program and transfer to the institution of his choice; (2) that in-cell televisions be placed in all SMU facilities; (3) punitive damages in the amount of $5,000 from each defendant; (4) compensatory damages in the amount of $5,000 from each defendant; (5) reimbursement of the costs of this proceeding; and (6) prevention from the defendants acting in a similar fashion in the future.

## II. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity

dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

### III. ANALYSIS

#### A. Constance Reese, Warden FCI Talladega

For a district court to assert personal jurisdiction over a nonresident defendant[2], two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. Of Dirs. Of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). The West Virginia long-arm statute is contained in W.Va. Code §56-3-33(a).[3]

---

[1] Id. at 327.

[2] The plaintiff clearly states that Constance Reese is the Warden of FCI Talladega, which is located in Alabama. Although the plaintiff has not provided the Court with an address for Warden Reese, it is reasonable to assume that she lives in Alabama.

[3] This section provides as follows:
(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of the subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;

The Southern District of West Virginia has succinctly stated as follows regarding personal jurisdiction:

> "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary...to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).
>
> To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interest here would not "Offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state."Hanson v. Denckla, 357 U.S. 235, 253, 78 S,Ct. 1228, 2 L.Ed.2d 1283 (1958)see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed..2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476, 105 S.Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D. W.Va. 2004).

With regard to the actions of this defendant, the plaintiff has failed to assert any contact by

---

(3) Causing tortious injury by an act or omission in this state;
(4)Causing tortious injury outside this state if he or she regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state; Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Having an interest in, using or possessing real property in this state; or
(7)Contracting to insure any person, property or risk located within this state at the time of contracting.

(b) When jurisdiction over a nonresident is based solely upon the provisions of this section, only a cause of action arising from or growing out of one or more of the acts specified in subdivision (1) through (7), subsection (a) of this section may be asserted against him or her.

4

her with the State of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Thus, based on the information contained in the Complaint, the Court cannot exercise personal jurisdiction over this individual as any action she took appears not to have occurred anywhere in West Virginia, and there is no indication that this defendant had any contact with the State of West Virginia. Accordingly, Warden Reese should be dismissed as a defendant.

**B. Harley Lappin, K.M. White, and James Cross**

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Truloch v. Freeh, 2755 F.2d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainbright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for violation of a constitutional right in a Bivens case. Rizzo v. Good 423 U.S. 362 (1976).

Here, beyond naming him the caption of the case, the plaintiff never again mentions Warden James Cross. Accordingly, he has failed to identify any action taken by Warden Cross that violated his constitutional rights.

With respect the Harley Lappin and K.M. White, it is clear that the plaintiff has named these defendants in their official capacity as the Director of the Federal Bureau of Prisons and the Mid Atlantic Regional Director of the BOP. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473

U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'").  Thus, remedy under <u>Bivens</u> is not available against Lappin and White in their official capacities, and they should be dismissed as defendants in this action.

## C. Debbie Lohr

In addition to challenging the conditions of his confinement in the SMU, the plaintiff also challenges that hearing procedure by which he was referred to the SMU.  The plaintiff makes no specific allegation that Ms. Lohr violated his due process rights, but he does allege that her appointment denied him the right to a fair and impartial hearing.

Pursuant to BOP Program Statement 5217.01, "designation to a SMU may be considered for any sentenced inmate whose interaction requires greater management to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public, because the inmate meets **any** of the following criteria:

- Participated in disruptive geographical group/gang-related activity.

- Had a leadership role in disruptive geographical group/gang related activity.

- Has a history of serious and/or disruptive disciplinary infractions.

- Committed any 100-level prohibited act, according to 28 C.F.R. part 541, after being classified as a member of Disruptive Group pursuant to 28 C.F.R. part 524.

- Participated in, organized, or facilitated any group misconduct that adversely affected the orderly operation of a correctional facility.

- Otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of Bureau facilities or protection of the public.

(Doc. 1-1, p. 2)(emphasis in original).

If an inmate appears to satisfy any of these referral criteria, the Unit Team may present a re-designation referral to the Warden. If the Warden approves the referral, it is submitted to the Regional Director. If the Regional Director determines that sufficient evidence exists to convene a hearing, the Regional Director appoints a Hearing Administrator to conduct a hearing into whether the inmate meets the criteria for SMU designation. (Doc. 1-1, p. 2).

In his complaint, the plaintiff alleges that he denied the right the participate in each stage of this referral procedure. However, the only stage of the referral procedure at which an inmate may attend is the hearing conducted by the Hearing Administrator. The inmate is required to receive the Pre-Hearing Notice at least 24 hours before the hearing. (Doc. 1-1, p. 2). In this case, the plaintiff was given the Notice on January 9, 2009, and the hearing was conducted on January 12, 2009.(Doc. 1-7, p. 4). Therefore he received proper notice.

The plaintiff also alleges that he was denied an impartial Hearing Administrator, because he had been before Ms. Lohr on numerous occasions for disciplinary proceedings, for which she imposed sanctions, including loss of good time. Therefore, the plaintiff maintains that Ms. Lohr was a witness who had first hand knowledge and experience and was able to testify to the facts or matters used in transferring the plaintiff to a SMU. BOP Policy Statement 5217.01 provides that the Hearing Administrator will have been trained and certified as a Discipline Hearing Officer ("DHO'). The Policy Statement also provides that the Hearing Administrator will be an impartial decision-maker, and will not have been personally involved as a witness or victim in any relevant disciplinary action involving that inmate. (Doc. 1-2. P. 2). Clearly, Ms. Lohr is trained and certified as a DHO, and she is the DHO assigned to Hazelton. However, the fact that she presided over DHO hearings

7

involving the plaintiff, the results of which were used to refer him to a SMU, does not make her a "witness" as used in PS 5217.01. Clearly, the term "witness" as used in this context means an individual who observed the actions that lead to a discipline report and/or testified at the DHO hearing. Moreover, any information that Ms. Lohr learned at the plaintiff's prior DHO hearings would have been available to her through review of the plaintiff's Central Office file. Accordingly, the plaintiff has failed to state a claim of any constitutional violation with respect to Ms. Lohr or the process through which he was transferred to a SMU.

### D. Conditions of Confinement

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain' or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted). These principles apply to the conditions of a prisoner's confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment). Therefore, while "'the Constitution does not mandate comfortable prisons,'" it also "does not permit [an] inhumane one." Id. (quoting Rhodes, 452 U.S. at 349). Moreover, to show an Eighth Amendment violation, the plaintiff must demonstrate (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. See Strickler v. Walters, 989 F.2d 1375, 1379 (4th Cir. 1993), cert denied 510 U.S. 949 (1993). Additionally, there must be evidence of a 'serious medical and emotional deterioration to the challenged condition." Id at 1380 (*quoting* Lopez v. Robinson, 914 F.2d 486,

490 (4th Cir. 1990)).

In his complaint, the plaintiff made numerous complaints about the conditions of his confinement in the SMU. However, the SMU in which the plaintiff is confined and about which he complains is located in FCI Talladega, over which this Court has no jurisdiction. Accordingly, the plaintiff's complaint as it reflates to his conditions of confinement should be dismissed without prejudice.

## IV. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's Bivens complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** against Harley Lappin, K.M. White, Warden James Cross and Debbie Lohr for failure to state a claim upon which relief can be granted and be **DISMISSED WITHOUT PREJUDICE** against Constance Reese lack of personal jurisdiction. In addition, it is the undersigned's recommendation that the plaintiff's complaint in so far as it raises issues regarding the conditions of his confinement be **DISMISSED WITHOUT PREJUDICE** to his right to bring an action regarding those conditions in the United States District Court having jurisdiction over USP Talladega. Finally, the undersigned recommends that the plaintiff's Motion for a Temporary Restraining Order and/or Motion for Preliminary Injunction (Doc. 20) be **DENIED** for lack of jurisdiction.[4]

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also

---

[4] In his motion, the plaintiff seeks an order enjoining the warden of FCI Talladega and the Regional Director of the Southeast Region, Roy Holt, from destroying, modifying, or changing in any way documents, videos, e-mails, memorandums, records, photos or any other tangible things related to incidents which occurred on March 11, 2010 at FCI Talladega.

9

be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested.

Dated: 6-17-2010

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE